IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DARLA ZIMMER, o/b/o
THOMAS E. ZIMMER, deceased,

        Plaintiff,

vs.                                        Case No. 11-2255-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits.  The matter has been fully briefed by the
parties.

## I.  General legal standards

    The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot,

2

considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to

determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 20, 2010, administrative law judge (ALJ) Debra Bice issued her decision (R. at 17-24). Plaintiff alleges that he has been disabled since August 1, 2009 (R. at 17). Plaintiff is insured for disability insurance benefits through March 31, 2013 (R. at 19). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since August 1, 2009, his alleged onset date (R. at 19). At step two, the ALJ found

4

that plaintiff had the following severe impairments: ulcerative colitis, osteoarthritis of the right knee status post total knee replacement, osteoarthritis of the bilateral shoulders, coronary artery disease, and osteoarthritis of the bilateral hands and wrists (R. at 19).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 20), the ALJ determined at step four that plaintiff was able to perform past relevant work as a driver (R. at 23).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23-24).

**III.  Did the ALJ err in assessing plaintiff's RFC?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative

5

discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings:

> After careful consideration of the entire
> record, I find that the claimant has the
> residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) except
> he cannot lift overhead or to the side with
> the right arm, but he can lift forward with

> both arms; he can occasionally climb stairs
> or ramps, but he can never climb ladders,
> ropes, or scaffolds; he should never be
> exposed to excessive cold temperatures; and
> he should not work in hazardous environments
> such as unprotected heights or around open
> water.

(R. at 20).  The record contains a state agency RFC assessment by a non-examining physician, Dr. Warren, who reviewed the records in the file as of May 27, 2009 (R. at 169-176).  The ALJ stated that he gave "very substantial weight to the opinion of the State agency medical consultant...because it is consistent with the weight of the evidence" (R. at 23).  The record does not contain any other medical opinion evidence regarding plaintiff's limitations.

There are a number of problems with the ALJ's RFC findings. First, the ALJ gave very substantial weight to a state agency assessment when determining plaintiff's RFC; the assessment consisted of a check-the-box evaluation form with little written explanation for the findings.  There is no other medical opinion evidence in the record regarding plaintiff's RFC limitations.  In the case of Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007), as in the case presently before the court, the ALJ indicated that his RFC findings generally agreed with the determinations made in a state agency RFC assessment.  The court indicated that such assessments primarily consist of check-the-box forms with little or no explanation for the conclusions

reached.   The court held as follows:

> These check-the-box evaluation forms,
> "standing alone, unaccompanied by thorough
> written reports or persuasive testimony, are
> not substantial evidence." <u>Frey v. Bowen</u>, 816
> F.2d 508, 515 (10th Cir.1987); <u>see</u> <u>also</u> Soc.
> Sec. R. 96-6p, 1996 WL 374180, at *2
> (permitting ALJ to rely on opinions of
> medical consultants if opinions are supported
> by evidence in case record). The record shows
> only a two-to-three-month work restriction
> imposed on Ms. Fleetwood immediately after
> her mitral valve replacement surgery. But **no
> other medical evidence in the record
> specifically addresses her ability to work**...
>
> **To the extent there is very little medical
> evidence directly addressing Ms. Fleetwood's
> RFC, the ALJ made unsupported findings
> concerning her functional abilities. Without
> evidence to support his findings, the ALJ was
> not in a position to make an RFC
> determination.**
>
> The ALJ's inability to make proper RFC
> findings "may have sprung from his failure to
> develop a sufficient record on which those
> findings could be based." <u>Washington v.
> Shalala</u>, 37 F.3d 1437, 1442 (10th Cir.1994).
> **The ALJ must "make every reasonable effort to
> ensure that the file contains sufficient
> evidence to assess RFC." Soc. Sec. R. 96-8p,
> 1996 WL 374184, at *5**. Because the disability
> hearing is nonadversarial, an ALJ is
> obligated to develop the record even where,
> as here, the claimant is represented by
> counsel. <u>Thompson v. Sullivan</u>, 987 F.2d 1482,
> 1492 (10th Cir.1993); <u>accord</u> <u>Hawkins v.
> Chater</u>, 113 F.3d 1162, 1164, 1168 (10th
> Cir.1997). Even though Ms. Fleetwood's
> counsel did not request any additional record
> development, the need for additional evidence
> is so clearly established in this record that
> the ALJ was obliged to obtain more evidence
> regarding her functional limitations. <u>See
> Hawkins</u>, 113 F.3d at 1167-68.

8

Fleetwood, 211 Fed. Appx. at 740-741 (emphasis added).  As in
Fleetwood, in the case before the court, Dr. Warren's assessment
provides little narrative explanation for his opinions regarding
plaintiff's limitations (R. at 169-176).

The court would also note that the assessment was prepared
by Dr. Warren on May 27, 2009 (R. at 176).  After that
assessment, a right shoulder hemiarthroplasty, or shoulder
replacement surgery, was performed on the plaintiff (R. at 216-
220).  However, subsequent to the surgery, the record does not
contain any medical RFC assessment regarding plaintiff's physical
limitations.  Thus, the impact, if any, of this surgery is not
reflected in the assessment by Dr. Warren.

Second, although the ALJ stated that she gave very
substantial weight to the opinions of Dr. Warren, her RFC
findings, without explanation, failed to include one of the
limitations found by Dr. Warren, i.e., Dr. Warren opined that
plaintiff's ability to push and/or pull, including operation of
hand and/or foot controls is limited in his upper extremities (R.
at 170).  Furthermore, the ALJ included limitations not set forth
in the assessment by Dr. Warren, including a finding that
plaintiff cannot lift overhead or to the side with the right arm,
but he can lift forward with both arms (R. at 20).  In the case
of Brown v. Commissioner of Social Security Administration, 245
F. Supp.2d 1175, 1186-1187 (D. Kan. 2003), the ALJ purported to

base his RFC findings on a state agency medical assessment. However, the ALJ's findings were not consistent with many items reflected in the assessment. The court noted that the ALJ never explained why he made findings inconsistent with the assessment, nor did he even acknowledge that he was rejecting portions of the assessment. The ALJ failed to explain how inconsistencies in the evidence were considered and resolved. The court therefore held that the ALJ failed to comply with SSR 96-8p.

It appears that the finding by the ALJ that plaintiff cannot lift overhead or to the side with the right arm, but can lift forward with both arms is based on plaintiff's testimony (R. at 20, 280); however, the ALJ, without explanation, did not include other limitations testified to by the plaintiff, including an inability to lift more than 5 pounds with his right arm, an inability to kneel on his right knee, an ability to stand for only 20 minutes at a time, and to walk for only 10-20 minutes at a time (R. at 20-21, 275, 276, 280). An ALJ must explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002). The ALJ erred by offering no explanation for why he included some of the limitations testified to by the plaintiff, but not others.

In light of the facts of this case, as set forth above, the court finds that the check-the-box state agency assessment,

standing alone, unaccompanied by thorough written reports or persuasive testimony, is not substantial evidence that would support the ALJ's RFC findings, especially in light of the fact that the ALJ, without any explanation, included limitations not in the assessment, but left out one limitation that was in the assessment.  Furthermore, the ALJ failed to provide any explanation for including some of the limitations testified to by the plaintiff, but not others.

When this case is remanded, the ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.  Therefore, on remand, the ALJ should consider recontacting plaintiff's treatment providers in order to determine if additional information regarding plaintiff's RFC is available (20 C.F.R. § 404.1512(e)(1)).  Fleetwood, 211 Fed. Appx. at 741; Lamb v. Barnhart, 85 Fed. Appx. 52, 57 (10th Cir. Dec. 11, 2003).  The ALJ could also consider having a medical expert testify at the hearing regarding plaintiff's RFC after reviewing the record.[1]

---

[1]The U.S. Supreme Court has considered the use of medical advisors at administrative hearings and approved of the concept. Richardson v. Perales, 402 U.S. 389, 408 (1971).  Such opinions are competent evidence and in appropriate circumstances may constitute substantial evidence supporting the ALJ's decision.  Lopez v. Apfel, 1997 WL 758831 at *2 (10th Cir. Dec. 9, 1997)(ALJ properly relied on opinions of medical advisor and consulting physicians who disagreed with treating physician on issue of disability); Torres v. Secretary of HHS, 870 F.2d 742, 744 (1st Cir. 1989)(the testimony of a medical advisor who reviews the record, testifies and is subject to cross-examination may constitute substantial evidence depending on the circumstances, including the nature of the illness and the information provided to the advisor).

Plaintiff also alleges error by the ALJ for failing to indicate what weight, if any, he gave to the opinions of a consulting physician. Dr. Morrow prepared a consultative report on April 25, 2009 (R. at 152-155); this report was summarized by the ALJ in her decision (R. at 21). However, Dr. Morrow did not offer any specific opinions regarding plaintiff's physical limitations. Furthermore, Dr. Warren specifically referenced the findings of Dr. Morrow when he completed his physical RFC assessment (R. at 170). On these facts, the court finds no clear error by the ALJ in her consideration of the opinions of Dr. Morrow.

**IV.  Did the ALJ err in her step four analysis?**

At step four, the ALJ is required by Social Security Ruling (SSR) 82-62 to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. Henrie v. United States Dep't of HHS, 13 F.3d 359, 361 (1993). Thus, at the third or final phase of the analysis, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these three phases, the ALJ must make specific findings. Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir.

12

2007);  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).[2]
An ALJ can comply with these requirements if he quotes the VE's
testimony with approval in support of his own findings at phases
two and three of the step four analysis.  <u>Doyal v. Barnhart</u>, 331
F.3d 758, 760-761 (10th Cir. 2003).[3]  When the ALJ fails to make

---

[2]In <u>Winfrey</u>, the court noted that the Secretary glossed over the absence of the required ALJ findings by relying on the testimony of the vocational expert (VE) that plaintiff could meet the mental demands of his past relevant work, given his mental limitations as found by the ALJ. The court stated that this practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged.  The court went on to say as follows:

> Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review.  When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five...Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

<u>Winfrey</u>, 92 F.3d at 1025.

[3]The ALJ's findings in <u>Doyal</u> were as follows:

> The vocational expert testified that the claimant's past relevant work as a housecleaner and sewing machine operator would be classified as light and unskilled, and her past relevant work as an activities director would be classified as light and semiskilled.... The vocational expert indicated that the claimant's past relevant work as a housecleaner and sewing machine operator did not require lifting more than 20 pounds, walking for prolonged periods, or performing tasks requiring bilateral normal grip strength.

findings at phase two of step four regarding the physical and/or mental demands of plaintiff's past work, the case will be remanded for a proper step four analysis.  <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1271-1273 (10th Cir. 2008); <u>Frantz v. Astrue</u>, 509 F.3d at 1303-1304; <u>Kilpatrick v. Astrue</u>, 559 F. Supp.2d 1177, 1182-1185 (D. Kan. 2008)(Belot, D.J.).  However, when the ALJ makes proper findings at step five, any error at step four will be deemed harmless error.  <u>Martinez v. Astrue</u>, 316 Fed. Appx. 819, 824 (10th Cir. Mar. 19, 2009); <u>see</u> <u>Murrell v. Shalala</u>, 43 F.3d 1388, 1389-1390 (10th Cir. 1994).

In the case before the court, the ALJ made findings at step four that plaintiff could perform past relevant work, and did not therefore address at step five whether plaintiff could perform other work in the national economy.  On remand, if the ALJ again finds that plaintiff can perform past relevant work and does not make a step five finding that plaintiff can perform other work in the national economy, the ALJ shall make the specific findings required at step four, including findings at phase two of step four regarding the physical demands of plaintiff's past work. Specifically, the ALJ must make findings at phase two regarding

_____

<u>Doyal</u>, 331 F.3d at 760.  The ALJ found that plaintiff could perform past relevant work as a housecleaner and a sewing machine operator.  331 F.3d at 761.  As noted above, the ALJ cited with approval the testimony of the vocational expert concerning the physical demands of the 2 past jobs which the ALJ found that the claimant could still perform.

the physical demands of plaintiff's past work in those areas in which the ALJ has found that plaintiff has physical limitations. Bowman, 511 F.3d at 1272-73 (ALJ erred when, after finding that plaintiff had limited use of her left hand, failed to make any findings about the handling demands of past relevant work).

## V.  Did the ALJ err in her credibility analysis?

Plaintiff also asserts error by the ALJ in her credibility findings.  The court will not discuss this issue in detail because it may be affected by the ALJ's resolution of the case on remand after obtaining further medical evidence regarding plaintiff's RFC.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).  However, the court will briefly address two issues raised by plaintiff in his brief.

First, the ALJ stated in her decision that plaintiff's treatment has been routine, infrequent, and conservative (R. at 22).  However, plaintiff has had surgery on his right knee and right shoulder replacement surgery.  Following his right shoulder replacement surgery, plaintiff wore a brace, participated in physical therapy and was on pain medication (R. at 216-220, 227-234).  It is not at all clear from the record that plaintiff's treatment could be considered routine, infrequent and conservative.  Furthermore, the ALJ is not entitled to sua sponte render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence

and make disability determinations; he is not in a position to
render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d
1248, 1262 (D. Kan. 2002).

Second, the ALJ found that plaintiff's activities of daily
living were inconsistent with allegations of disability.  Citing
to Exhibit 4E, the ALJ noted that he could provide for his own
personal care, prepare meals, exercise, read, watch TV, shop, and
perform household chores and minor repairs (R. at 22).  However,
not mentioned by the ALJ were the limitations discussed in
Exhibit 4E.  Plaintiff indicated that he has difficulty buttoning
shirts and pants, bathing, and reaching to clean himself when
using the toilet (R. at 92).  He also indicated that he cannot
iron or mow (R. at 93).

The importance of considering plaintiff's limitations in his
daily activities was highlighted in two recent decisions in the
10th Circuit which found error when the ALJ mischaracterized the
extent of plaintiff's daily activities, ignoring the
qualifications and limitations that were reported.  Krauser v.
Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Sitsler v.
Astrue, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011).
In Sitsler, the court determined that the ALJ's findings
regarding the claimant's activities did not include numerous
limitations.  The court then stated:

> We have criticized this form of selective and
> misleading evidentiary review, holding that

16

> an ALJ cannot use mischaracterizations of a
> claimant's activities to discredit his claims
> of disabling limitations. See Sisco v. U.S.
> Dep't of Health & Human Servs., 10 F.3d 739,
> 742-43 (10th Cir.1993) (ALJ took claimant's
> testimony out of context, selectively
> acknowledged only parts of her statements,
> and presented his findings as accurate
> reflections of her statements); see also
> Talbot v. Heckler, 814 F.2d 1456, 1462, 1464
> (10th Cir.1987) (ALJ improperly based
> conclusion claimant could do light work on
> mischaracterization of his activities).

Sitsler, 410 Fed. Appx. at 117-118.

Furthermore, according to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity.  20 C.F.R. § 404.1572(c) (2011 at 398).  Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's

allegations of disabling pain were inconsistent with her reports
of her normal daily activities and were therefore not deemed
credible.  The court found that substantial evidence did not
support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her
> home and does her best to engage in ordinary
> life activities is not inconsistent with her
> complaints of pain, and in no way directs a
> finding that she is able to engage in light
> work.**  As we said in McCoy v. Schweiker, 683
> F.2d 1138, 1147 (8th Cir.1982) (en banc), the
> test is whether the claimant has "the ability
> to perform the requisite physical acts day in
> and day out, in the sometimes competitive and
> stressful conditions in which real people
> work in the real world."  In other words,
> evidence of performing general housework does
> not preclude a finding of disability.  In
> Rainey v. Dep't of Health & Human Servs., 48
> F.3d 292, 203 (8th Cir.1995), the claimant
> washed dishes, did light cooking, read,
> watched TV, visited with his mother, and
> drove to shop for groceries.  We noted that
> these were activities that were not
> substantial evidence of the ability to do
> full-time, competitive work. In Baumgarten v.
> Chater, 75 F.3d 366, 369 (8th Cir.1996), the
> ALJ pointed to the claimant's daily
> activities, which included making her bed,
> preparing food, performing light
> housekeeping, grocery shopping, and visiting
> friends.  We found this to be an unpersuasive
> reason to deny benefits: **"We have repeatedly
> held...that 'the ability to do activities
> such as light housework and visiting with
> friends provides little or no support for the
> finding that a claimant can perform full-time
> competitive work.' "** Id. (quoting Hogg v.
> Shalala, 45 F.3d 276, 278 (8th Cir.1995)).
> Moreover, we have reminded the Commissioner
>
> > **that to find a claimant has the
> > residual functional capacity to**

18

> **perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**

Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).  When this case is remanded, plaintiff's daily activities must be considered in light of all the evidence and the case law set forth above.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 4th day of April 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

19